**16-1102**

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

———————————

Stopinc Aktiengesellschaft,

Plaintiff-Appellant,

v.

J.W. Hicks, Inc.

Defendant-Appellee.

———————————

**Appeal from the United States District Court
for the Northern District of Indiana,
in 2:14-CV-238
Judge Phillip P. Simon**

———————————

### RESPONSE BRIEF OF DEFENDANT-APPELLEE

———————————

D. Randall Brown
Barnes & Thornburg LLP
110 East Wayne Street, Suite 600
Fort Wayne, Indiana  46802
(260) 423-9440

Alice J. Springer
121 West Franklin Street
Suite 200
Elkhart, Indiana 46515
(574) 237-1120

*Counsel for Defendant-Appellee
J.W. Hicks, Inc.*

February 4, 2016

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Stopinc Akteigesellschaft          **v.**    J.W. Hicks, Inc.

Case No.   16-1102

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

D. Randall Brown                    certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

J.W. Hicks, Inc.

2.    The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below. (Please list each party or amicus curiae represented with the parent or publicly held company that owns 10 percent or more so they are distinguished separately.)

None

4. ☐   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

D. Randall Brown, Alice J. Springer - Barnes & Thornburg LLP

February 4, 2016                    /s/D. Randall Brown
_____                    _____
Date                               Signature of counsel

Please Note: All questions must be answered

cc: _____               D. Randall Brown
                                   _____
                                   Printed name of counsel

Reset Fields

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... iii

I.    STATEMENT OF RELATED CASES ........................................... 1

II.   STATEMENT OF THE CASE ...................................................... 1

III.  STATEMENT OF THE ISSUES .................................................. 2

IV.   STATEMENT OF FACTS ............................................................ 3

      A.    The '435 Patent and the Claim Amendments Stopinc Made at
            the PTO to Obtain the Patent.................................................... 3

      B.    J.W. Hicks' Accused Slide Gate .............................................. 8

V.    SUMMARY OF ARGUMENT ..................................................... 9

VI.   ARGUMENT ............................................................................... 10

      A.    Stopinc Misunderstands the Summary Judgment Standard ............... 10

      B.    The Patent Infringement Standard and Limits Imposed on the
            Doctrine of Equivalents by Prosecution History Estoppel ................. 12

            1.    The infringement standard .......................................... 12

            2.    Prosecution history estoppel acts as a bar to claims of
                  infringement under the doctrine of equivalents ....................... 14

      C.    Stopinc is Barred by Prosecution History Estoppel from
            Relying on the Doctrine of Equivalents to Establish
            Infringement ......................................................................... 16

            1.    Stopinc narrowed claim 1 by amendment ............................... 16

            2.    Stopinc had a substantial reason related to patentability
                  for the amendment .................................................. 17

i

3.    *The amendment bore more than a tangential relationship to the alleged equivalent and Stopinc has waived any contrary argument.*.....................................................................23

VII.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT.....................25

CERTIFICATE OF SERVICE & CM/ECF FILING 16-1102 .....................27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ........................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Nurses Ass'n v. Illinois*,
   783 F.2d 716 (7th Cir. 1986) .................................................................11

*Amgen Inc. v. Hoescht Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) ...........................................................23

*Anderson v. Liberty Lobby Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................11

*Babrocky v. Jewel Food Co. & Retail Meatcutters*,
   773 F.2d 857 (7th Cir. 1985) .................................................................11

*Bai v. L&L Wings, Inc.*,
   160 F.3d 1350 (Fed. Cir. 1998) ...........................................................18

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
   922 F.2d 792 (Fed. Cir. 1990) .............................................................13

*Chimie v. PPG Indus. Inc.*,
   402 F.3d 1371 (Fed. Cir. 2005) ...........................................................11

*Chore-Time Equip. Inc. v. Cumberland Co.*,
   713 F.2d 774 (Fed. Cir. 1983) .............................................................11

*Continental Can Co. v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) ...........................................................11

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005) ...........................................................24

*Dolly Inc. v. Spalding & Evenflo Cos.*,
   16 F.3d 394 (Fed. Cir. 1994) ...............................................................13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   344 F.3d 1359 (Fed. Cir. 2003) ...............................................15, 16, 23

iii

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002).......................................................... 2, 10, 14, 15, 16, 24, 25

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950)..................................................................13

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
    734 F.3d 1352 (Fed. Cir. 2013) ..........................................23

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ..........................................24

*Panduit Corp. v. HellermannTyton Corp.*,
    451 F.3d 819 (Fed. Cir. 2006) ............................................12

*Pioneer Magnetics, Inc. v. Micro Linear Corp.*,
    330 F.3d 1352 (Fed. Cir. 2003) .............................. 11, 14, 15, 17, 18, 19, 21, 23

*Sextant Avionique, S.A. v. Analog Devices, Inc.*,
    172 F.3d 817 (Fed. Cir. 1999) ............................................18

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ..........................................24

*Sofamor Danek Group v. DePuy-Motech, Inc.*,
    74 F.3d 1216 (Fed. Cir. 1996) ............................................14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)..........................................................13, 15, 18, 21

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*,
    904 F.2d 677 (Fed. Cir.), *cert. denied*, 498 U.S. 992 (1990) ............13

## Statutes

35 U.S.C. § 102(b) ........................................................4, 5, 18

## Other Authorities

FED. R. CIV. P. 56(c)........................................................11, 12

iv

## I.     STATEMENT OF RELATED CASES

No other appeal in the same civil action was previously before this or any other appellate court.

## II.     STATEMENT OF THE CASE

Plaintiff-Appellant Stopinc Aktiengesellschaft's ("Stopinc") Statement of the case is incomplete.  Defendant-Appellee J.W. Hicks, Inc. ("J.W. Hicks") filed the motion for summary judgment and supporting brief that is the subject of this appeal on January 29, 2015.  (A4-5 (ECF Nos. 35-36)).  On March 2, 2015, Stopinc filed its response, which included an affidavit from a foreign patent lawyer who oversaw prosecution of United States Patent No. 6,422,435 (the "'435 Patent").  (A5 (ECF No. 37); A284).  J.W. Hicks filed its reply on March 19, 2015 (A5 (ECF No. 38)) and also separately moved to strike the patent lawyer's affidavit.  (A5 (ECF Nos. 39-40)).   Stopinc responded to the motion to strike on April 6, 2015. (A5 (ECF No. 43)).  J.W. Hicks filed a reply on April 16, 2015, closing the briefing on all issues related to the motion for summary judgment.  (A5 (ECF No. 44)).

The district court conducted a hearing on the motion for summary judgment on June 22, 2015.  (A6 (ECF No. 50)).  The district court granted summary judgment in favor of J.W. Hicks on September 17, 2015 (the "Opinion").  (A27-

1

46).   At that time, although it denied J.W. Hicks' motion to strike the patent lawyer's affidavit, the district court noted that the prosecution history was clear and that an explanation of it from the patent lawyer was neither necessary nor appropriate.  (A45-46).

## III.    STATEMENT OF THE ISSUES

J.W. Hicks disagrees with Stopinc's Statement of the Issues and, therefore, restates the issue as:

1.    Whether the district court properly applied prosecution history estoppel to bar a claim of infringement under the doctrine of equivalents based on its legal conclusion that the admitted narrowing of claim 1 of the patent-in-suit during prosecution was done for reasons substantially relating to patentability, where (a) the original claims were cancelled after being rejected based on prior art, (b) new, narrower claims were submitted, (c) the patent owner argued that the narrower claims "are clearly patentable over the prior art of record," and (d) the narrower claims were allowed, and further where the patent owner makes no attempt to overcome the presumption that it surrendered claim coverage through any of the *Festo* exceptions.

## IV.    STATEMENT OF FACTS

Stopinc's Statement of Facts is argumentative in many respects and J.W. Hicks disagrees with the legal conclusions drawn therein by Stopinc.  Accordingly, the facts are restated as follows:

**A.    The '435 Patent and the Claim Amendments Stopinc Made at the PTO to Obtain the Patent**

The patent application that matured into the '435 Patent was filed in the U.S. Patent & Trademark Office ("PTO") on January 26, 2001, claiming priority to a PCT application filed July 5, 1999.   (A129).  The application included one independent claim and 13 dependent claims. (A136-39).

Original application claim 1 claimed a:

Sliding gate valve for a container containing molten metal including a housing portion, which is securable to the latter, and a slider unit, which is longitudinally movable with respect to it, in which respective refractory valve plates are insertable, which may be pressed against one another by means of spring elements and serve to open and close the sliding gate valve, characterized in that the slider unit is longitudinally movably mounted on the housing portion by *a plurality of mounting means aligned perpendicular to it, these mounting means being secured either to the housing portion or the slider unit and oppositely having guide means which slides on a respective guide track constructed on the slider unit or on the housing portion.*

(A136 (emphasis added) (ref. nos. omitted)). The italicized portion above contains the "mounting components/guide track/guide element" limitations at issue in this appeal.  As can be seen, Stopinc originally claimed that the mounting components (i.e., "mounting means") could alternatively be secured to the housing unit or slider

unit such that the guide elements  (i.e., "guide means") were on either the housing unit or slider unit and the guide tracks were on the other.  (*Id*.)

A number of the original dependent claims considered by the PTO examiner contained further limitations on the mounting means and guide track of claim 1. Application claim 2, for example, required that "on both sides of the valve plate there are preferably two respective mounting means which each have a peg-shaped connecting element."  (*Id*.).  Claim 3 specified that the connecting element of the mounting means "is acted on by a compression spring."  (*Id*.).  Claim 5 required "that the four mounting means are arranged in the housing portion," whereas claim 6 (like claim 1) provided that the mounting means "are arranged in the housing portion **or** the slider unit."   (A137 (emphasis added)).  Claim 7 added the requirements that there be two guide tracks and that the guide elements on the mounting means were preferably "rollers."  (*Id.*).

On November 6, 2001, the PTO issued its first office action rejecting all 14 claims on multiple grounds.  (A220-25).  The examiner found that all of the claims were anticipated by each of three separate prior art references.  (A223-24).  The examiner specifically concluded that:

> Claims 1-14 are rejected under 35 U.S.C. § 102(b) as being anticipated by any of Holtermann et al, Kleebatt and Plattner et al.  Each of Holtermann et al, Kleebatt and Plattner et al teach a sliding gate valve for a molten metal container including the housing portion, a slider unit longitudinally moveable with respect to the housing portion, *where the slider unit is connected to the housing portion by a plurality of mounting means secured*

4

> *to either of the housing portion or the slider unit and guide means on either of the slider unit or housing portion, thereby showing all aspects of the above claims. . . .*

(*Id.* (citations omitted) (emphasis added)).

On February 28, 2002, in response to the PTO's prior art based rejection of all pending claims, Stopinc cancelled claims 1-14 and submitted new claims 15-40. (A241-50). In remarks accompanying the amendment, Stopinc affirmatively represented the following:

> The Examiner rejected claims 1-14 as being anticipated by any one of the Holtermann reference (USP 5,421,563), the Kleebatt reference (USP 5,141,139), and the Plattner reference (USP 5,836,485). However, as indicated above, the original claims have been cancelled and replaced with new claims 15-40, including new independent claims 15 and 29. *Although the new independent claims generally correspond to original independent claim 1, the new independent claims have been drafted to clarify the scope of the original claims and, more specifically, to clarify the arrangement of the mounting components and the slider unit. Thus, for the reasons discussed below, it is respectfully submitted that new claims 15-40 are clearly patentable over the prior art of record.*

(A248-49 (emphasis added)).

Application claim 15, which ultimately issued as claim 1, provides for:

> A sliding gate valve to be mounted to a container for containing molten metal, comprising:
>> a housing portion to be secured to the container;
>> a slider unit mounted to said housing portion *and having guide tracks*;
>> a first refractory valve plate and a second refractory valve plate inserted between said housing portion and said slider unit and operable to open and close the sliding gate valve; and
>> *a plurality of mounting components aligned perpendicular to said slider unit so as to mount said slider unit to said housing portion such that*

5

> *said slider unit is slidable with respect to said housing portion, each of said* <u>*mounting components having*</u>*:*
>> <u>*a first end secured to said housing portion;*</u>
>> *a spring element for pressing said first refractory valve plate and said second refractory valve plate against each other;*
>> *a second end opposite said first end; and*
>> <u>*a guide element*</u> *on said second end* <u>*for riding on a respective one of said guide tracks of said slider unit,*</u> *said mounting components being arranged such that two guide elements are positioned on each of two opposite sides of said refractory valve plates*;
>> *wherein said slider unit is operable to be moved so as to position said guide elements at a location whereat a height of said guide tracks is lower than a height of a remaining portion of said guide tracks so as to relax said spring elements to allow release of said slider unit from said housing portion.*

(A242 (emphasis added)).

As can be seen by comparing the italicized portions of application claims 1 and 15, the mounting component/guide track/guide element limitations from original application claim 1 were narrowed in response to the prior art rejections to now require mounting components having (a) one end secured to the housing portion (rather than either the housing portion or slider unit); and (b) a guide element on the other end that rides on a guide track located specifically on the slider unit (as opposed to either the housing portion or slider unit).  (*Compare* A136 *with* A242).

In its arguments accompanying the amendment, Stopinc emphasized this narrowing amendment and that the resulting specific arrangement of the mounting

6

components and guide elements in application claim 15 distinguishes the claim

from the prior art:

- "However, the Holtermann reference *does not disclose or suggest mounting components each having a spring element and a guide element, and being arranged as recited in independent claims 15 and 29.*" (A249 (underlining in original, italics added)).

- "However, the Kleeblatt reference *does not disclose or suggest mounting components for mounting a slider unit to a housing portion, in which each of the mounting components has a spring element and a guide element, and in which the mounting components are arranged as recited in Independent claims 15 and 29.*" (A249-50 (underlining in original, italics added)).

- "However, the Plattner reference *does not disclose or suggest mounting components arranged as recited in independent claims 15 and 29.*"  (A250 (underlining in original, italics added)).

- "As discussed above, the Holtermann reference, the Kleebatt reference, and the Plattner reference *do not disclose or suggest a plurality of mounting components arranged as recited in claims 15-40.*   Therefore, one of skill in the art would not be motivated to modify or combine the references in a manner that would result in

7

claims 15-40.   Accordingly, it is respectfully submitted that new independent claims 15 and 29, and the claims that depend from therefrom, are clearly patentable over the prior art of record." (A250 (emphasis added)).

On March 27, 2002, the Examiner issued a Notice of Allowability "responsive to the amendment filed on 2-28-2002" indicating that claims 15-40 are allowed.  (A256).  Thus, by narrowing the mounting component/guide track/guide element limitations, Stopinc overcame the prior art rejections and the '435 Patent issued on July 23, 2002.  (*See* A50).

Stopinc asserted only claims 1-12 of the '435 Patent against J.W. Hicks.  (A106).  Claims 2-12 all depend from independent claim 1.  (A55-56).

**B.    J.W. Hicks' Accused Slide Gate**

J.W. Hicks' Titan slide gate differs from that claimed in the '435 Patent in multiple ways.  For purposes of this appeal, however, one difference—one that Stopinc concedes—is dispositive: the mounting components of the Titan slide gate secure the guide tracks to the housing portion of the slide gate, not to the slider unit.  Stated another way, the slider unit of the Titan slide gate has guide elements (i.e., rollers), not guide tracks, and the mounting components secured to the housing have guide tracks, not guide elements.  (A112; *see also* Stopinc's Br. at 9-10).

8

## V.    SUMMARY OF ARGUMENT

Summary judgment of non-infringement should be affirmed. The '435 Patent prosecution history makes clear that: (1) as originally filed, claim 1 did not require mounting components secured to the housing of a slide gate and including guide elements, or guide tracks that are part of the slider unit; (2) the examiner rejected the claim based on prior art; (3) Stopinc cancelled the claim and submitted a new claim which expressly requires mounting components secured to the housing and including guide elements, and guide tracks that are part of the slider unit; and (4) the new claim was allowed.  Thus, the public record establishes that Stopinc narrowed its claims during prosecution and had a substantial reason relating to patentability for doing so.  These objective facts create a presumption that Stopinc surrendered claim coverage over the alleged equivalent structures in J.W. Hicks' slide gate.

Stopinc admits that J.W. Hicks' slide gate does not literally include a slider unit with guide tracks or mounting components with guide elements secured to a housing and, thus, to prove infringement Stopinc has to rely on the doctrine of equivalents.  These admissions, coupled with Stopinc's inability to rebut the presumption, compel the legal conclusion that prosecution history estoppel bars Stopinc's infringement claim.

9

Relying on a conclusory affidavit from a foreign patent lawyer who oversaw prosecution of the '435 Patent, Stopinc's sole argument on appeal is that the claim amendment was not related to patentability.   First, as the district court correctly noted, and as controlling case law makes clear, the patent attorney's subjective testimony cannot be used to alter the public record.  In any event, Stopinc does not (because it cannot) explain why the affidavit should be considered by this court. Second, Stopinc's argument is simply contrary to the public record which establishes that the specific arrangement of mounting components with guide elements, not guide tracks, is what distinguished the claims from the prior art.

Tacitly admitting that the narrowing amendment was related to patentability, Stopinc argued below that the presumption of surrender could be overcome based on the "tangential relation" exception explained in the *Festo* cases.  The district court properly concluded as a matter of law that the exception does not apply. Stopinc did not challenge that finding in its opening brief and cannot do so via a reply.  Any contrary argument has been waived.

Thus, the decision below should be affirmed.

## VI.    ARGUMENT

### A.    Stopinc Misunderstands the Summary Judgment Standard

Summary judgment is not a disfavored procedural shortcut, but rather is intended to avoid a useless trial, and is appropriate where it is quite clear what the

10

truth is. *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 861 (7th Cir. 1985). As explained by the Seventh Circuit, "[t]he purpose of summary judgment is to head off trials the outcome of which is foreordained." *American Nurses Ass'n v. Illinois*, 783 F.2d 716, 730 (7th Cir. 1986). Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The Rule 56 standard applies to patent cases just as it does to any other case. *Chore-Time Equip. Inc. v. Cumberland Co.*, 713 F.2d 774, 778-79 (Fed. Cir. 1983) ("[W]here no issue of material fact is present . . . courts should not hesitate to avoid an unnecessary trial by proceeding under Fed. R. Civ. P. 56 without regard to the particular type of suit involved."); *Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264, 1265 (Fed. Cir. 1991). The defense of prosecution history estoppel is particularly suited for resolution on summary judgment because it is a question of law for the court to decide. *See e.g. Pioneer Magnetics, Inc. v. Micro Linear Corp.,* 330 F.3d 1352, 1356 (Fed. Cir. 2003) (affirming summary judgment, noting prosecution history estoppel is a question of law reviewed *de novo*); *Chimie v. PPG Indus. Inc.,* 402 F.3d 1371, 1376 (Fed. Cir. 2005) (same).

As evidenced by its second issue presented for review, Stopinc misunderstands the Rule 56 standard and its application to prosecution history

11

estoppel. (*See* Stopinc's Br. at 2). Stopinc suggests that the district court erred "by not viewing the evidence presented in the prosecution history of the patent in a light most favorable to the Appellant opposing the motion, with all doubts resolved in favor of the Appellant." (*Id.*). Stopinc provides no argument supporting this issue statement because none exists. Rule 56 is clear that the evidence is to be viewed in the light most favorable to the non-movant only when determining whether there is a genuine issue of material fact. *See Panduit Corp. v. HellermannTyton Corp.,* 451 F.3d 819, 825 (Fed. Cir. 2006) (addressing the Seventh Circuit's summary judgment standard). There was no question of fact before the district court. Indeed, Stopinc admitted as much at the summary judgment hearing in response to questioning from the bench: "And secondly, about your question of fact and law, clearly this is a question of law determined by you. This is a jury case, but this is your call. Absolutely." (A377-78; *see* A375-76). Having admitted that there were no contested facts below, it is not surprising that Stopinc fails to identify any genuine issue of material fact in its opening brief on appeal that would preclude entry of summary judgment.

**B.    The Patent Infringement Standard and Limits Imposed on the Doctrine of Equivalents by Prosecution History Estoppel**

### 1.    *The infringement standard*

The essential inquiry in any infringement analysis is "[d]oes the accused product . . . contain elements *identical* or *equivalent* to each claimed element of the

patented invention?" *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997) (emphasis added).   Where all claimed elements are present in an accused product exactly, the claim "reads on" the accused product and there is literal infringement.  *See, e.g., Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990).   Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson*, 520 U.S. at 21 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)).   The doctrine of equivalents is not a license to ignore claim elements.  *See e.g., Dolly Inc. v. Spalding & Enflo Cos.*, 16 F.3d 394, 397-98 (Fed. Cir. 1994).   It also cannot properly be used to extend or enlarge the scope of claims.  *See, e.g., Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir.), *cert. denied*, 498 U.S. 992 (1990).   Thus, there are "various legal limitations on the application of the doctrine of equivalents [that] are to be determined by the Court."  *Warner-Jenkinson*, 520 U.S. at 39, n.8 (emphasis in original).   Prosecution history estoppel is one such limitation.

### 2.    *Prosecution history estoppel acts as a bar to claims of infringement under the doctrine of equivalents*

Prosecution history estoppel "serves to limit the doctrine of equivalents by denying equivalents to a claim limitation whose scope was narrowed during prosecution for reasons related to patentability." *Pioneer Magnetics,* 330 F.3d at 1356.    Claim coverage surrendered during prosecution cannot be recaptured through the doctrine of equivalents. *See, e.g., Sofamor Danek Group v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1222 (Fed. Cir. 1996).    As the Supreme Court has stated:

> Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process. . . . The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes. When, however, the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733-34 (2002). "Were it otherwise, the inventor might avoid the PTO's gatekeeping role and seek to recapture in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Id.* at 734.    As succinctly explained by the Supreme Court in *Festo*, "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Id*. at 736.

14

When considering whether a claim amendment gives rise to prosecution history estoppel, courts "first must determine whether the amendment narrowed the literal scope of the claim." *Pioneer Magnetics,* 330 F.3d at 1356. Assuming it does, the court next turns to the reasons why the applicant amended the claim at issue. *Id.* (citing *Warner-Jenkinson*, 520 U.S. at 32-33). At this step, the burden is on the patent holder to establish that the reason for the amendment is not one related to patentability and, "[w]here no explanation is established, the court should presume that the applicant had a substantial reason related to patentability for the amendment." *Id.* As explained by the Supreme Court in *Festo*, "[w]hen the patentee is unable to explain the reason for amendment, estoppel not only applies but also 'bars the application of the doctrine of equivalents as to that element.'" 535 U.S. at 740 (quoting *Warner-Jenkinson*, 520 U.S. at 33).

Importantly, only the public record of the patent prosecution, the prosecution history, can provide a basis for the reason for the amendment. *Pioneer Magnetics,* 330 F.3d at 1356. To allow otherwise would undermine the public notice function of the patent record. *Id.* As such, this court has rejected the use of testimony seeking to explain the reasons for amending claims during prosecution. *Id.*

On remand in *Festo*, this court concluded that the "rebuttal of the presumption of surrender is a question of law to be determined by the court." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed.

15

Cir. 2003). The court reiterated the Supreme Court's holding that the presumption may be rebutted under certain discrete circumstances including where the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question. *Id.* at 1369-70.

### C.    Stopinc is Barred by Prosecution History Estoppel from Relying on the Doctrine of Equivalents to Establish Infringement

The district court correctly applied *Festo* in finding that Stopinc was estopped as a matter of law from pursuing its infringement action under the doctrine of equivalents. Indeed, the public record is clear and unmistakable that Stopinc (1) narrowed its claims during prosecution by amendment, (2) had a substantial reason relating to patentability for its amendment, and (3) cannot overcome the presumption that through the amendment it surrendered claim coverage over the alleged equivalent. Through its opening brief, Stopinc admits the first prong—i.e., that its amendment was narrowing, and waives any argument regarding the third prong by failing to even address the *Festo* exceptions necessary to overcome the presumption of estoppel. Stopinc's appeal rises and subsequently falls on the second prong because the objective record clearly demonstrates that Stopinc amended the claims for reasons substantially related to patentability.

### 1.    *Stopinc narrowed claim 1 by amendment*

At the district court level, Stopinc was unwilling to expressly concede that claim 1 was narrowed during prosecution, forcing J.W. Hicks and the court to

16

expend resources addressing this first prong of the prosecution history estoppel analysis.   (A302-04; A39, n.1).   The district court correctly found that the amendment was narrowing "because a claim allowing for only one orientation of components is certainly more narrow than one that allows two separate orientations." (A39, n.1).   On appeal, Stopinc admits that the amendment was narrowing.   (Stopinc Br. at 27 ("Similarly, the narrowing of claim 1 does not necessarily preclude infringement by the doctrine of equivalents.")).

A before and after comparison of application claim 15 (A242) and application claim 1 (A136) confirms the narrowing of the claim.   The mounting component/guide track/guide element limitations from original application claim 1 were narrowed to require mounting components having (a) one end secured to the housing portion (rather than either the housing portion or slider unit); and (b) a second end which includes a guide element that rides on a guide track located specifically on the slider unit (as opposed to either the housing portion or slider unit).

### 2. *Stopinc had a substantial reason related to patentability for the amendment*

As indicated above, the burden is on the patent holder to establish that the reason for amendment is not one related to patentability.   *Pioneer Magnetics,* 330 F.3d at 1356.   If no explanation is established, the court should presume that the "applicant had a substantial reason related to patentability for the amendment."   *Id.*

17

The *Pioneer Magnetics* decision makes clear that "[o]nly the public record of the patent prosecution, the prosecution history, can be a basis for such a reason." *Id.* Considering evidence outside of the prosecution history is prohibited because to do otherwise would undermine the public notice function of the patent record. *Id.*

Here, the prosecution history is clear and unmistakable that Stopinc had a substantial reason related to patentability for the amendments. The examiner rejected application claim 1 during prosecution based on 35 U.S.C. § 102(b) in light of the Holtermann, Kleebat, and Plattner prior art references. (A223-24). In response, Stopinc cancelled the claim and replaced it with narrower application claim 15. The public record—Stopinc's own actions and words—establish that the amendment was made for patentability reasons. Indeed, Stopinc repeatedly and specifically argued that none of the prior art references disclose or suggest the now narrower mounting component/guide track/guide element limitations arranged as recited in independent application claim 15. (A248-49). Under these circumstances, Stopinc simply cannot meet its burden of establishing a reason unrelated to patentability for its amendment. *See Warner-Jenkinson,* 520 U.S. at 30-31; *see also Sextant Avionique, S.A. v. Analog Devices, Inc.,* 172 F.3d 817, 826 (Fed. Cir. 1999) (citing *Bai v. L&L Wings, Inc.,* 160 F.3d 1350, 1355 (Fed. Cir. 1998) (substantive changes to a claim that clearly respond to an examiner's

rejection of that claim as unpatentable over prior art give rise to prosecution history estoppel).

As was the case in *Pioneer Magnetics*, the patent owner here seeks to rely upon testimony from its patent lawyer to support its argument that the reason for the amendment was unrelated to patentability.  The declaration of attorney Willi Luchs is cited throughout Stopinc's Statement of Facts (Stopinc's Br. at 6-7, 12-16, and 19) and again in the Argument section.  (Stopinc's Br. at 25).  The district court properly declined to give "the affidavit any weight because 'only the public record of the patent prosecution, the prosecution history, can be a basis' for determining the reason for a claim amendment, and therefore courts 'do not consider [a] declaration in determining the reason for the amendment to the claim.'"[1] (A45-46 (quoting *Pioneer Magnetics*, 330 F.3d at 1356)).  Stopinc offers no explanation whatsoever as to why the district court erred in this regard.

Stopinc's argument that it advised the PTO it was not surrendering the alternative arrangements of the mounting components and guide tracks of original application claim 1 is not consistent with the public record, but rather distorts it. (Stopinc Br. at 28).  At no point in its remarks accompanying its substituted claims

---

[1] In addition to moving to strike the affidavit (*see* A5 (ECF Nos. 39-40, 44)), citing *Pioneer Magnetics*, J.W. Hicks advised the district court that "[r]egardless of whether the declaration is formally stricken or not, the substantive patent law is clear that Luchs' subjective and conclusory testimony cannot alter or 'trump' the public record." (A300, n.1).

did Stopinc argue that substituted claim 15 covered both alternative locations of the mounting components and guide tracks. (A248-50). To the contrary, substituted claim 15 added the requirement that the mounting components are secured to the housing and the guide tracks are located on the slider unit, while substituted claim 29 added the opposite requirement—mounting components secured to slider unit and guide tracks located on housing. (A242). The fact that an alternate arrangement may be protected in a different claim says nothing about whether claim 1 was narrowed or the reasons for the narrowing amendment. By its plain language, claim 1 was narrowed when the "either/or" language regarding the location of the mounting components and guide tracks was removed and replaced with language affirmatively limiting the location of the mounting components to the housing and the guide tracks to the slider unit.

Stopinc repeatedly argues that it did not amend its claims for reasons related to patentability, claiming after-the-fact that it did not rely upon a specific location for the guide tracks and guide elements to distinguish over the prior art. (Stopinc's Br. at 15-18). This is objectively false. Original claim 1 was rejected based on the prior art (A223-24); Stopinc substituted claim 15 with the narrowing amendments regarding the physical characteristics and location of the mounting components and guide element/tracks and the claim was allowed. (A242). Moreover, Stopinc argued to the patent examiner (and told the public at large) that "the Holtermann

20

reference does not disclose or suggest mounting components each have and spring element ***and a guide element***, ***and being arranged as recited in independent claims 15 and 29***." (A249 (emphasis added)). The specific location of the guide element on the mounting components is the very feature used to distinguish the amended claim over Holtermann. The same is true regarding Kleebatt. (A248-50 ("However, the Kleebatt reference does not disclose or suggest mounting components for mounting a slider unit to a housing portion, in which each of the mounting components has a spring element ***and a guide element, and in which the mounting components are arranged as recited in independent claims 15 and 29***." (emphasis added)). Stopinc repeatedly argued that the new claims "are clearly patentable over the prior art of record." (A248-50). The burden is on Stopinc to establish that the reason for the amendment is not one related to patentability. *See Warner-Jenkinson,* 520 U.S. at 33. It has utterly failed in this regard and, as a result, it is presumed that the amendments were for reasons related to patentability. *See Pioneer Magnetics*, 330 F.3d at 1357.

Stopinc distorts the public record with its argument that the absence of a "cumbersome frame" is what distinguished the claim over the prior art. (*See* Stopinc's Br. at 14-15, 18, 25, and 27). The prosecution history cannot objectively be read to support this argument. Indeed, the claim itself does not preclude the use of a frame. This after-the-fact argument is also false in view of the prior art of

record.  Holtermann et al. expressly discusses elimination of a frame as one of the advantages of the invention.  (*See* A316, Col. 1, lines 17-26 and 44-66 discussing the use of frames in the prior art and A317, Col. 3, lines 33-51 discussing the advantages of the Holtermann et al. device, which eliminates the frame).  Note, that in responding to the rejection, Stopinc specifically argues that the Kleeblaat reference has a frame (A249), but makes no such representation about Holtermann et al.  (A248-50).

At the summary judgment hearing, Stopinc took an entirely different approach.  There, Stopinc argued that "the spring element is what added a new feature to the claim [and] [i]f we were trying to claim equivalents on the spring element, we would be done. . . ."  (A389, *see also* A385-90).  The problem with this argument is that spring elements were known in the art and were not used to distinguish all three references, a fact noted by J.W. Hicks at the hearing and made clear in the file history.  (A396-403; A248-50; *see also* A348 (Fricker ), Col. 3, line 34 to Col. 4, line 38; A318 (Holtermann), Col. 6, lines 14-23; A71).  Presumably based on this clear record, Stopinc chose not to advance the spring argument on appeal.

Stopinc's shifting arguments are all contrary to the public record.  Stopinc seeks to disavow that record by arguing that it should not be estopped because it did not need to amend the claims for the reasons it stated.  Even assuming the

amendment was voluntary and unnecessary (and it was not), that would not shield the particular limitations from prosecution history estoppel. *See Pioneer Magnetics,* 330 F.3d at 1357 ("However, the mere fact that an amendment is voluntary does not shield it from prosecution history estoppel."); *Amgen Inc. v. Hoescht Marion Roussel, Inc.,* 314 F.3d 1313, 1345 (Fed. Cir. 2003).

### 3.    *The amendment bore more than a tangential relationship to the alleged equivalent and Stopinc has waived any contrary argument.*

As discussed above, the prosecution history demonstrates that claim 1 was narrowed for reasons related to patentability, thus creating a presumption of surrender of claim scope.  At the district court, Stopinc admitted that two of the three potential ways to rebut this presumption were inapplicable, relying solely on the "tangential relation" exception.    (A278; *see also* A39).    To rebut the presumption in this fashion, Stopinc was required to "prove by a preponderance of the evidence that, based on the prosecution history, the 'objectively apparent reason for the narrowing amendment' was only tangentially related to the equivalent." *Integrated Tech. Corp. v. Rudolph Techs., Inc*., 734 F.3d 1352, 1358 (Fed. Cir. 2013) (quoting *Festo*, 344 F.3d at 1369).  This it failed do because the public record made clear that the reason for the narrowing amendment—overcoming the prior art by specifying the location and characteristics of the mounting components and location of the guide tracks—is directly related to the alleged equivalent structure in J.W. Hicks' Titan slide gate—mounting components with guide tracks

secured to the housing and guide rollers, not tracks, on the slider unit. Thus, based on the clear public record, Stopinc's admissions, and a thorough analysis of the controlling authority, the district court correctly concluded that Stopinc could not overcome the presumption through the tangential relationship exception. (A40-45).

Stopinc did not challenge the district court's finding that the tangential relationship exception does not apply in its opening brief and cannot do so via a reply. The "law is well-established that arguments not raised in the opening brief are waived." *SmithKline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312, 1319-20 (Fed. Cir. 2006) (*citing Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1320-21 n.3 (Fed. Cir. 2005)); *see also Invitrogen Corp. v. Clontech Labs., Inc.,* 429 F.3d 1052, 1077 n.21 (Fed. Cir. 2005).

This is not a situation involving an oversight or legal "gotcha." Whether or not the exception applied was extensively briefed at the district court level (A14-15; A305-08) and thoughtfully addressed by the district court in the Opinion. (A40-45). In so doing, the district court noted that Stopinc's claim that this case falls under the second *Festo* exception was an apparent admission "that its amendment narrowed this claim, since the presumption applies to only a narrowing amendment." (A39, n.1). A review of the Statement of Issues Presented for Review in its opening brief suggests that Stopinc seeks to avoid this tacit

24

admission by challenging whether the narrowing amendment was substantially related to patentability rather than arguing the amendment was only tangentially related to the alleged equivalent.  (Stopinc's Br. at 2).  The Summary of Argument section confirms this decision; Stopinc argues "that the record at the PTO establishes that the claims were not narrowed for any reason relating to patentability, and thus estoppel should not have been applied."  (Stopinc's Br. at 20).  At no point in its opening brief does Stopinc reference the tangential relationship (or any *Festo*) exception.  Thus, the argument has been waived.

## VII.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Defendant-Appellee J.W. Hicks requests that the Court affirm the district court's opinion applying prosecution history estoppel and granting summary judgment, along with an award of costs and all other appropriate relief.


Dated:    February 4, 2016

Respectfully submitted,


/s/D. Randall Brown
D. Randall Brown
*randy.brown@btlaw.com*
**BARNES & THORNBURG LLP**
110 East Wayne Street, Suite 600
Fort Wayne, Indiana  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316

Alice J. Springer
*alice.springer@btlaw.com*
121 West Franklin Street
Suite 200
Elkhart, Indiana 46515
Telephone:  (574) 237-1120
Facsimile:  (574) 237-1125

*Counsel for Defendant-Appellee*
*J.W. Hicks, Inc.*

## CERTIFICATE OF SERVICE & CM/ECF FILING
## 16-1102

I hereby certify that I electronically filed the Brief for Defendant-Appellee using the Court's Case Management/Electronic Case Filing system, which will send a "Notice of Docket Activity" to the below-listed counsel.  One (1) copy of the brief was sent via United Parcel Service Next Business Day Delivery to:

> Gerard F. Dunne
> Law Office of Gerard F. Dunne, P.C.
> 41 Union Square, Suite 1125
> New York, New Yok  10003
>
> Email:
> - jerry.dunne@dunnelaw.net

> BARNES & THORNBURG LLP

> /s/ D. Randall Brown
> D. Randall Brown
> *randy.brown@btlaw.com*
> 110 East Wayne Street
> Suite 600
> Fort Wayne, Indiana  46802
>
> Alice J. Springer
> *alice.springer@btlaw.com*
> 121 West Franklin Street
> Suite 200
> Elkhart, Indiana 46515
>
> *Counsel for the Defendant-Appellee*
> *J.W. Hicks, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

The undersigned, counsel of record for the Defendant-Appellee J.W. Hicks, Inc., furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

The brief contains 5,856 words (including the words appearing in the image contained in the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Word 2007 for Law Firms in Times New Roman 14-point font.

Dated:  February 4, 2016

BARNES & THORNBURG LLP

/s/D. Randall Brown
D. Randall Brown

*Counsel for Defendant-Appellee J.W. Hicks*

DMS 3438745v1